LIQUID CARBONIC ACID MANUFACTURING COMPANY and LENORE ST. CLAIR, Appellants, v. PHŒNIX INSURANCE COMPANY OF LONDON.

126   225
141   610

126   225
144   331

**Insurance:** WAIVER OF CONDITIONS: AUTHORITY OF LOCAL AGENT. Code section 1750 providing that any officer, agent or other representative of an insurance company who may solicit insurance or transact the business generally of such company shall be held to be an agent with authority to transact all business within the scope of his employment, prohibits any limitations upon the authority of an agent having the powers enumerated in said section to transact all business within the apparent scope or usual extent of his employment; and under this section a local agent may waive the conditions of a policy and consent to an incumbrance upon the property.

*Appeal from Mahaska District Court.*— HON. JOHN T. SCOTT, Judge.

SATURDAY, DECEMBER 17, 1904.

SUIT at law upon a contract of fire insurance issued to the plaintiffs' assignor.   There was a trial to a jury, and a directed verdict for the defendant, from which the plaintiffs appeal.— *Reversed.*

*H. H. Sheriff, Carr, Hewitt, Parker & Wright,* and *J. F. & W. R. Lacey,* for appellants.

*Edmund H. McVey* and *Gleason & Preston,* for appellee.

SHERWIN, J.— The policy in suit was issued by the defendant, through its local agent at Oskaloosa, Chas. E. Brown, to the Oskaloosa Cigar Company, in January, 1901; A. J. St. Clair being at the time the manager of the cigar company. On the 18th day of June, 1901, the policy was assigned to St. Clair, with the consent of the defendant, through the agent, Brown. The business had at that time been changed into a bottling works, and an indorsement was attached to the policy covering the bottling machinery and some household goods. On the 7th day of August, 1901, a chattel mortgage was given by St. Clair to W. R. Lacey, covering the property insured by the policy. A large part of the bottling machinery was bought of the plaintiff manufacturing company some time in April or May, 1901, under a conditional contract whereby the company retained a lien upon the property for the purchase price. This contract was not recorded, however, until the 27th of August, 1901.

The policy contained a stipulation that it should be absolutely void, unless otherwise provided by agreement indorsed thereon or added thereto, if the property insured, or any part thereof, should be mortgaged, " or if any persons than the assured now have, or shall hereafter acquire any interest in or lien on the property hereby insured or any part thereof." The policy also contained this provision:

This policy is made and accepted subject to the foregoing stipulations and conditions, together with such other provisions, agreements or conditions as may be indorsed hereon or added hereto, and no officer, agent or other representative of this company, except the general manager of this company in Chicago, shall have the power to waive, change or modify any provision or condition of this policy, except such as by the terms of this policy may be the subject

of agreement indorsed hereon or added hereto, and as to such provisions and conditions no officer, agent or representative, except the general manager of this company in Chicago, shall have such power, or be deemed or held to have waived, changed or modified such provisions or conditions, and such waiver if any, shall be written hereon or attached hereto, nor shall any privilege or permission affecting the insurance under this policy exist or be claimed by the insured unless so written or attached.

It is conceded there was a breach of the contract, and, unless it be shown that there was a waiver thereof by the defendant, no recovery can be had on the policy. There was evidence tending to prove that the local agent, Brown, was notified of the conditional contract with the manufacturing company, and of the mortgage to Lacey, and that he consented thereto, and agreed to have the proper indorsement made on the policy, and subsequently told St. Clair that the policy was all right without such indorsement. It must be conceded, for the purposes of this opinion, that the evidence on this subject was sufficient to warrant the jury in finding that Brown had knowledge of the change of title and of the mortgage, and that he orally consented thereto. What, then, was his actual authority in the premises? His appointment as agent was contained in a written instrument which authorized him " to receive proposals for insurance; to receive moneys and to countersign, issue and renew policies of insurance subject to such rules and regulations as are or may be adopted by said company." The appellant contends that the policy itself gave the local agent authority to waive, change, or modify the provisions or conditions thereof, provided only that such waiver be in writing indorsed thereon. The provision of the policy will not bear this construction, however. It says that no agent except the general manager shall have power to waive, change, or modify any provision or condition of the policy, except such as by the terms thereof may be the subject of

agreement indorsed thereon, and that, as to those provisions, no agent except such manager "shall have such power, or be deemed or held to have waived, changed or modified such provisions or conditions, and such waiver, if any (clearly meaning the waiver made by the general agent) shall be written upon or attached thereto." The substance of this provision is that waivers can only be made by the general agent in Chicago, and that when so made by him they must be in writing indorsed upon the policy. So far, then, as the policy is concerned, there was no authority given to Brown to modify or change its conditions. On the contrary, he was expressly prohibited from so doing. If, therefore, he had any actual authority to change or modify any of its conditions, such authority must be found elsewhere than in the policy. The written appointment to which we have referred did not make him the general agent of 'the company, or give him authority to change or modify the conditions of the policy after it was issued, and nowhere in the record is there evidence tending to show that the actual authority given by the written appointment was enlarged in any way by the company. Brown testified that he never made indorsements upon policies without the approval of the company, and there is no evidence contradicting him on this subject. Considering this evidence in connection with the limitations of the policy, it is clear that, under the decisions of this court prior to the enactment of section 1750 of the Code, Brown had no power to bind the company by such waiver. *Ruthven v. Ins. Co.,* 92 Iowa, 316; *Kirkman v. Ins. Co.,* 90 Iowa, 457; *Taylor v. Ins. Co.,* 98 Iowa, 521; *O'Leary & Bro. v. Ins. Co.,* 100 Iowa, 179.

This brings us to the consideration of section 1750 of the Code, which was enacted in 1897, and which, so far as it relates to this case, is as follows: "Any officer, agent or other representative of an insurance company doing business in this State who may solicit insurance, procure applica-

tions, issue policies, adjust losses or transact the business generally of such companies, shall be held to be the agent of such company with authority to transact all business within the scope of his employment, anything in the application, policy, contract, by-laws or articles of incorporation of such company to the contrary notwithstanding." If this statute was intended to, and does, inhibit any limitations or restrictions upon the authority of an agent having the powers enumerated therein to transact all business within the apparent scope or usual extent of his employment, the local agent, Brown, could waive the conditions of the policy and consent to the incumbrance upon the property. In *Viele v. Ins. Co.*, 26 Iowa, 9, decided in 1868, this court held that a local recording agent having power to issue and countersign policies could waive the conditions in a policy, and the forfeitures arising therefrom, in the absence of limitations upon his authority brought to the knowledge of the assured; and this has been the rule recognized in this State, as well as in other States, since that time. *Garretson v. Ins. Co.*, 81 Iowa, 729. For the evident purpose of avoiding the effect of such decisions, insurance companies inserted conditions and provisions in their policies limiting the powers of the local agent, so that no waiver of conditions or forfeitures could be made except by a designated person — usually some general agent residing at some other place. Policies containing such restrictive clauses have frequently been before this court, and the limitations held valid. *Ruthven Bros. v. Ins. Co.*, 92 Iowa, 316; *Kirkman v. Ins. Co.*, 90 Iowa, 457; *Taylor v. Ins. Co.*, 98 Iowa, 521; *Zimmerman v. Ins. Co.*, 77 Iowa, 691.

These decisions do not hold that there can be no waiver by the local agent in the absence of limitations upon his authority of which the assured has knowledge, and hence they are not in conflict with the *Viele Case*, and other decisions of this court along the same line. They rest upon

the restrictions and limitations upon the agent's authority expressed in the contract of insurance. The enforcement of such limitations often resulted in denying the assured recovery when it was manifest that the act of the local agent upon which he had relied was clearly within the apparent scope of his employment, because of the peculiar nature of the insurance business. It is of necessity transacted through such agent. He solicits the risk, and issues and countersigns the policy; and it is to him that the policy holder goes for changes in his policy made necessary by the varying conditions of his business, and for all other matters relating to his insurance. The policy holder depends entirely upon such agent, and knows no one else in the transaction. The inequity of these restrictive conditions was apparent to every one having even superficial knowledge of the insurance business. The legislature, having in mind the power of the local agent under the decisions of this and other courts in the absence of such restrictive clauses, and the decisions made necessary by them, undoubtedly enacted the statute for the express purpose of prohibiting the limitation of the agent's power by provisions in the contract. This is the only logical construction of the statute, in view of the previous decisions and the general policy of legislative control of the business.

It was error, therefore, to hold that Brown had no authority to waive the conditions of the policy, and on all questions of fact the case should have been submitted to the jury.— *Reversed.*